1 Yasir Billoo, Esq.
  (CA Bar No. 235091)
2 International Law Partners LLP
  2122 Hollywood Blvd
3 Hollywood, FL 33020
  Tel:954-374-7722
4 Email: ybilloo@ilp.law

5 Spencer M. Aronfeld, Esq. (FL Bar No. 905161)
  Matthias M. Hayashi, Esq. (FL Bar No. 115973)
6 Aronfeld Trial Lawyers
  1 Alhambra Plaza, Penthouse
7 Coral Gables, FL 33134
  Telephone: (305) 441-0440
8 Email: aronfeld@aronfeld.com
  Email: mhayashi@aronfeld.com

9 Attorneys for Plaintiff,
  WILLIAM KAST
10

11                   UNITED STATES DISTRICT COURT
                     CENTRAL DISTRICT OF CALIFORNIA
12                              LOS ANGELES

13 WILLIAM KAST,
                                            CASE NO. 25-7477
14              Plaintiff,
                                            **COMPLAINT FOR DAMAGES AND
15        v.                                DEMAND FOR TRIAL BY JURY**

16 PRINCESS CRUISE LINES, LTD.,

17              Defendant.

18              **COMPLAINT FOR DAMAGES
                AND DEMAND FOR TRIAL BY JURY**
19
       Plaintiff, WILLIAM KAST (hereinafter "KAST"), through undersigned counsel, sues
20
   Defendant, PRINCESS CRUISE LINES, LTD., (hereinafter "PRINCESS"), and demands trial by
21
   jury, stating as follows:
22

23

24

## PARTIES AND JURISDICTION

1. KAST seeks damages in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees.

2. This Court has admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333.

3. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states and/or citizens of a state and citizens or subjects of a foreign state.

4. Suit is filed in federal court because of the federal forum selection clause in the passenger contract ticket issued by PRINCESS.

5. KAST is *sui juris* and is a resident and citizen of the state of Arkansas.

6. PRINCESS is a citizen of the state of California and the nation of Bermuda.

7. PRINCESS is a foreign corporation that is authorized to conduct and that does conduct business in the state of California, that at all times material hereto was and is doing business in Santa Clarita, California, and that maintains its corporate headquarters and principal place of business in Broward County, California.

8. PRINCESS, at all times material hereto, personally and/or through an agent, in Broward County, California, in the Central District of California:

    a. Operated, conducted, engaged in, or carried on a business venture; and/or

    b. Had an office or agency; and/or

    c. Engaged in substantial activity; and/or

9. All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

**FACTUAL ALLEGATIONS**

10. The "subject area" refers to the subject ceiling, including the ceiling panels, and the immediately surrounding area.

11. At all times material hereto, PRINCESS owned, leased, chartered, operated, maintained, managed, and/or controlled the subject cruise ship, *the Enchanted Princess*.

12. At all times material hereto, PRINCESS owned, leased, chartered, operated, maintained, managed, and/or controlled the subject area involved in KAST'S incident.

13. KAST'S incident occurred on or about June 17, 2024, while he was a fare paying passenger on PRINCESS'S vessel, *the Enchanted Princess*.

14. On or about June 17, 2024, in the early morning, as KAST was sitting in a designated smoking area on Deck 17, water began dripping from the ceiling. Kast moved to a different area on Deck 17. A short time later, the ceiling collapsed onto KAST'S head with water rushing down. A photograph of the collapsed ceiling is attached below.



15. As a result, KAST sustained severe injuries, including, but not limited to, head, neck, and back injuries, fusion of two cervical vertebrae, spondylosis, foraminal stenosis, and chronic head, neck, and back pain.

16. At all relevant times, the risk-creating and/or dangerous condition was the subject ceiling that fell on KAST.

17. This dangerous condition caused KAST's incident and injuries because it caused the blunt force trauma to KAST's head, neck, and back.

18. PRINCESS either knew or should have known of this risk-creating and/or dangerous condition, due to reasons that include, but are not limited to, the following:

   a. KAST observed PRINCESS crewmembers in the subject area within 5-10 feet of the exact location of the ceiling collapse, who were in the subject area 10-15 minutes prior to when KAST sat in the area and were able to see that the ceiling had been leaking for at least this period of time. These crewmembers had direct line of sight on the exact location of the ceiling above KAST, were within viewing distance thereof, and were close enough to have seen that the subject ceiling was leaking water. PRINCESS also has crewmembers responsible for inspecting public areas every 10-15 minutes for hazards, and it is unreasonable for them not to have noticed the ceiling leaking However, these crewmembers failed to block off, warn of, and/or repair the subject ceiling prior to collapsing on KAST.

   b. There was a wet floor cone in the area right below where the ceiling collapsed, as seen in the photograph attached above, showing that PRINCESS knew that the floor was wet from the water leaking from the ceiling prior to KAST's incident, but did not adequately warn of or prevent the ceiling from collapsing due to the water

leaking.

c. PRINCESS participated in the installation and/or design of the subject ceiling, or alternatively, PRINCESS accepted the ceiling with its unreasonably dangerous defective design present after having been given an opportunity to inspect the ship and materials on it, including the subject ceiling, such that PRINCESS should have known of the unreasonably dangerous defective design of the subject ceiling before providing it for public use.

d. There are relevant safety standards/recommendations/other guidelines regarding the safety of the subject area, including, but not limited to, prohibitions and/or recommendations against walking surfaces such as the ceiling that collapsed on KAST, as well as PRINCESS's own policies and procedures.

e. PRINCESS also knew or should have known of this dangerous condition through inspecting the subject area involved in KAST'S incident, and if it did not know of this dangerous condition, this was because PRINCESS failed to adequately inspect the subject area prior to KAST'S incident.

f. Previous passengers in prior cases suffered prior incidents involving the same ceiling on the same ship and other ships in PRINCESS's fleet.

g. Moreover, PRINCESS knew or should have known of this dangerous condition for other reasons that will be revealed through discovery.

19. At all times relevant, the subject area was unreasonably dangerous, risk-creating, defective, improperly designed, improperly installed, and/or otherwise unsafe.

20. The subject area and the vicinity lacked adequate safety features to prevent or minimize KAST'S incident and/or injuries.

21. The dangerous condition was known, or should have been known, to PRINCESS in the exercise of reasonable care.

22. The dangerous condition existed for a period of time before the incident.

23. At all times relevant, PRINCESS failed to adequately inspect the dangerous condition. For example, PRINCESS was required, by its own policies and procedures, to inspect the subject ceiling in certain intervals of time (such as, for example, every fifteen minutes), to ensure that no safety hazards were present. However, PRINCESS failed to inspect the ceiling during the intervals its own policies and procedures required, thereby causing it to be unable to address the dangerous condition prior to KAST'S incident.

24. At all times relevant, PRINCESS failed to maintain the condition in a reasonably safe condition such that it was not dangerous. For example, PRINCESS failed to perform regular upkeep on the subject ceiling, including, but not limited to, by failing to ensure that the ceiling was not experiencing water damage or that there were leaks above the ceiling panels.

25. At all times relevant, PRINCESS had the ability to remedy the dangerous condition but failed to do so. For example, PRINCESS could have covered, removed, or blocked off the location of the subject area that had a leak in the ceiling but failed to do so.

26. The dangerous condition was not open nor obvious to reasonable passengers, including KAST, and PRINCESS failed to adequately warn KAST of the danger.

27. At all times relevant, PRINCESS participated in the design and/or approved the design of the subject area and the vicinity involved in KAST'S incident.

28. At all times relevant, PRINCESS participated in the installation and/or approved the installation of the subject area and the vicinity involved in KAST'S incident.

29. The crewmembers of *the Enchanted Princess* were in regular full-time employment of PRINCESS and/or the ship, as salaried crewmembers.

30. PRINCESS's crewmembers, employees, and/or agents were subject to the ship's discipline and master's orders, and PRINCESS had the right to hire and fire its crewmembers, employees, and/or agents.

31. PRINCESS is directly responsible and liable for their actions and the actions of its crewmembers, employees, and/or agents.

32. The crewmembers, including the medical staff, were employees and agents of PRINCESS, and acted within the course and scope of their employment and/or agency agreement and/or the ship.

## COUNT I
## NEGLIGENT FAILURE TO REMEDY

33. KAST hereby adopts and re-alleges each and every allegation in paragraphs 1-32 as if set forth herein.

34. PRINCESS owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

35. This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately remedying the dangerous condition.

36. At all times material, PRINCESS, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with PRINCESS, breached the duty of reasonable care owed to KAST and were negligent by failing to adequately remedy the dangerous condition.

37. PRINCESS either knew or should have known of these risk-creating and/or dangerous condition, due to reasons that include, but are not limited to, the reasons discussed in

paragraph 18.

38. Moreover, this risk-creating and/or dangerous condition was caused by PRINCESS'S failure to adequately remedy the dangerous condition.

39. PRINCESS'S breach was the cause in-fact of KAST'S great bodily harm in that, but for PRINCESS'S breach KAST'S injuries would not have occurred.

40. Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

41. PRINCESS'S breach proximately caused KAST great bodily harm in that the incident that occurred was a foreseeable result of PRINCESS'S breach.

42. As a result of PRINCESS'S negligence, KAST has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of KAST'S vacation, cruise, and transportation costs.

43. The losses are permanent and/or continuing in nature.

44. KAST has suffered these losses in the past and will continue to suffer such losses in the future.

**WHEREFORE**, Plaintiff, WILLIAM KAST, demands judgment against Defendant, PRINCESS CRUISE LINES, LTD., for damages suffered and costs incurred, as well as for damages and costs that KAST will suffer and incur in the future, as a result of KAST's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization,

medical care and treatment, nursing care and treatment, loss of important bodily functions, loss of independence, lost wages, lost earning capacity, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT II
## NEGLIGENT FAILURE TO WARN OF DANGEROUS CONDITION

45. KAST hereby adopts and re-alleges each and every allegation in paragraphs 1-32 as if set forth herein.

46. At all times relevant, PRINCESS owed a duty to exercise reasonable care under the circumstances for the safety of its passengers, including KAST.

47. Such duty includes, but is not limited to, the duty that PRINCESS owes to warn passengers of any dangers that it knew or should have known were not open and obvious to KAST.

48. Such duty also includes, but is not limited to, the duty to warn passengers of hazards, which passengers may reasonably be expected to encounter.

49. At all times material, PRINCESS, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with PRINCESS, breached the duty of reasonable care owed to KAST and was negligent by failing to warn KAST of the dangerous condition.

50. Furthermore, PRINCESS knew or should have known of this dangerous condition for the reasons discussed in paragraph 18.

51. This dangerous condition was also created by PRINCESS.

52. PRINCESS failed to adequately ensure there was no dangerous condition that passengers needed to be warned of, and/or PRINCESS failed to warn KAST despite knowing of

the danger.

53. This dangerous condition existed for a period of time before the incident.

54. This dangerous condition was neither open nor obvious to KAST.

55. PRINCESS'S breach was the cause in-fact of KAST'S great bodily harm in that, but for PRINCESS'S breach KAST'S injuries would not have occurred.

56. Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

57. PRINCESS'S breach proximately caused KAST great bodily harm in that the incident that occurred was a foreseeable result of PRINCESS'S breach.

58. As a result of PRINCESS'S negligence, KAST has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of KAST'S vacation, cruise, and transportation costs.

59. The losses are permanent and/or continuing in nature.

60. KAST has suffered these losses in the past and will continue to suffer such losses in the future.

**WHEREFORE**, Plaintiff, WILLIAM KAST, demands judgment against Defendant, PRINCESS CRUISE LINES, LTD., for damages suffered and costs incurred, as well as for damages and costs that KAST will suffer and incur in the future, as a result of KAST's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization,

medical care and treatment, nursing care and treatment, loss of important bodily functions, loss of independence, lost wages, lost earning capacity, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT III
## NEGLIGENT DESIGN, INSTALLATION, AND/OR APPROVAL OF THE SUBJECT FLOOR AND THE VICINITY

61. KAST hereby adopts and re-alleges each and every allegation in paragraphs 1-32 as if set forth herein.

62. PRINCESS negligently designed, or in the alternative, approved of the design of the subject area in the following manner: PRINCESS designed, or in the alternative, approved of the design of the ceiling that collapsed on KAST despite the fact that it lacked adequate means of remaining secure even when exposed to water, and/or PRINCESS designed or, in the alternative, approved of the plumbing above the ceiling despite the fact that it leaked enough water to damage the ceiling to such an extent that it would collapse on KAST and cause his injuries.

63. PRINCESS should have designed the subject area without the defects enumerated above, or in the alternative, should not have approved of the subject area with these defects present. Therefore, PRINCESS is liable for designing, or in the alternative, approving of the design of the subject area with these defects present.

64. At all times material hereto, PRINCESS owed a duty to its passengers, and in particular a duty to KAST, not to permit a dangerous condition to be in a place where it could harm passengers, as well as to design and install reasonable safeguards.

65. At all times material hereto, PRINCESS participated in the design process of the

1  subject vessel by generating design specifications for the shipbuilder to follow, and to put the
2  vessel on which KAST was injured into the channels of trade, and/or PRINCESS approved of
3  the subject vessel's design, including the design of the subject ceiling and the vicinity.

4      66. At all times material hereto, PRINCESS manufactured, designed, installed, and/or
5  approved of *the Enchanted Princess*, including providing specifications to the shipbuilder in the
6  original build process, and/or during its refurbishments, and as such owed a duty to its
7  passengers, and in particular a duty to KAST, to design, install and/or approve of the subject
8  ceiling such that the aforementioned dangerous conditions were not present at the time of
9  KAST'S incident.

10      67. At all times material hereto, PRINCESS through its agents and/or employees who
11  were acting in the course and scope of their employment and/or agency with PRINCESS,
12  designed, installed, and/or approved of the subject ceiling and the vicinity involved in KAST'S
13  incident, which was also in violation of the applicable industry standards/recommendations
14  and/or other guidelines.

15      68. PRINCESS provides design elements of the vessels to the ship builder and/or
16  approves of design elements which include the subject floor and the vicinity.

17      69. PRINCESS maintains the contractual right to participate, review, modify, and/or
18  reject the design plans and drawings of the vessels, including *the Enchanted Princess*, during the
19  new build process.

20      70. PRINCESS has the right to enter the ship and inspect it during construction to
21  ensure that it is being constructed in accordance with the design specifications and has a right to
22  insist on changes when safety concerns are identified.

23      71. PRINCESS has the right to inspect and reject design elements before taking
24

1  possession of the ship.

2  72. However, PRINCESS permitted the dangerous condition to be present in the subject
3  area and the vicinity without correcting these design deficiencies and did not design and install
4  reasonable safeguards.

5  73. Furthermore, PRINCESS knew or should have known of the dangerous condition
6  for the reasons discussed in paragraph 18.

7  74. The design flaws that made the subject ceiling and the vicinity involved in KAST'S
8  incident unreasonably dangerous were the direct and proximate cause of KAST'S injuries.

9  75. PRINCESS is liable for the design flaws of the vessel, including of the subject
10 ceiling and the vicinity involved in KAST'S incident, which it knew or should have known of.

11 76. PRINCESS failed to correct and/or remedy the defective condition, despite the fact
12 that PRINCESS knew or should have known of the danger.

13 77. PRINCESS'S breach was the cause in-fact of KAST'S great bodily harm in that,
14 but for PRINCESS'S breach KAST'S injuries would not have occurred.

15 78. Furthermore, the subject ceiling and the vicinity were also on a cruise ship in the
16 water subject to numerous maritime conditions such as the ship's movement, additional wear-
17 and-tear due to maritime conditions not necessarily present on land, waves, and other conditions
18 unique to maritime travel, and as such were "clearly linked to nautical adventure."

19 79. PRINCESS'S breach proximately caused KAST great bodily harm in that the
20 incident that occurred was a foreseeable result of PRINCESS'S breach.

21 80. As a result of PRINCESS'S negligence, KAST has suffered severe bodily injuries
22 resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of
23 independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life,
24

expense of hospitalization, medical and nursing care and treatment, and loss of the value of KAST'S vacation, cruise, and transportation costs.

81. The losses are permanent and/or continuing in nature.

82. KAST has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, WILLIAM KAST, demands judgment against Defendant, PRINCESS CRUISE LINES, LTD., for damages suffered and costs incurred, as well as for damages and costs that KAST will suffer and incur in the future, as a result of KAST's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of important bodily functions, loss of independence, lost wages, lost earning capacity, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

**COUNT IV**
**VICARIOUS LIABILITY FOR THE NEGLIGENT DESIGN, INSTALLATION, AND/OR APPROVAL OF THE SUBJECT SURFACE AND THE VICINITY AGAINST PRINCESS**

83. KAST hereby adopts and re-alleges every allegation in paragraphs 1-32 as if set forth herein.

84. This is an action against PRINCESS for its vicarious liability for the active negligence of its employees for their negligent design, construction and selection of the subject area.

85. **DUTIES OWED BY PRINCESS**. At all times material herein, the crew aboard *the Enchanted Princess* were the employees of the Defendant. PRINCESS is therefore

vicariously liable for the active negligence of its crew for their negligent design, construction and selection of the subject area. PRINCESS therefore owes a duty to exercise reasonable care for the safety of its passengers by and through its employees. PRINCESS's crew have a duty of care which includes to design, construct and select materials for all areas and features of its vessels, including the subject areas, as part of their duty of reasonable care under the circumstances. PRINCESS's crew had a duty to design the subject area including shipboard common area ceilings in a reasonably safe manner and in accordance with industry standards.

86. At all times material hereto, PRINCESS's employees assigned to design, construct and/or select materials for PRINCESS ships were subject to the control and/or right to control by PRINCESS. PRINCESS operated, controlled and/or maintained departments of employees who are designated and/or responsible for the design, construction and/or selection materials of PRINCESS ships. Similarly, PRINCESS operated, controlled and/or maintained departments of employees who are responsible for repairs, redesign, upgrades, updates and/or modifications of areas onboard PRINCESS ships. PRINCESS was responsible for among other things and without limitation overseeing the operations of its employees who design construct and/or select materials for PRINCESS ships and/or responsible for repairs, redesign, upgrades, updates and/or modifications of areas onboard PRINCESS ships; selecting, purchasing and maintaining designs, construction and/or selection of materials for its ships; training, evaluating, managing and coaching employees responsible for the design, construction and/or selection of materials for its ships; and establishing rules, protocols and/or procedures for employees responsible for the design, construction, selection of materials, repairs, redesign, upgrades, updates and/or modifications of PRINCESS's ships.

87. Upon information and belief and at all times material hereto PRINCESS employs,

operates and/or otherwise controls departments which are designated and/or otherwise assigned to design, construct, select materials of ships as well as repairs, redesign, upgrades, updates and/or modifications to existing ships. Upon information and belief and at all times material hereto these departments include but may not be limited to the New Build Department and Refurbishment Departments. PRINCESS's departments including the New Build and Refurbishment departments plan, organize, operate and/or control the design, construction, selection of materials, repairs, redesign, upgrades, updates and/or modifications to PRINCESS ships. These employees create, review and/or approve all designs, construction, selection of materials, repairs, redesign, upgrades, updates and/or modifications to PRINCESS ships. To do so these employees work individually and in teams, undergo regular and continuous meetings amongst the responsible departments as well as PRINCESS employees who work onboard and/or visit PRINCESS's ships.

88. PRINCESS's employees custom designed, and custom built *the Enchanted Princess* to their specifications. PRINCESS employees participated in and/or approved of the design of the subject area including the unreasonably dangerous ceiling, ceiling panels, and plumbing. PRINCESS's employees participated in and/or approved of the selection of the materials for the subject area including the subject ceiling. PRINCESS's employees participated in and/or approved of the installation of the materials for the subject area including the unreasonably dangerous ceiling. PRINCESS's employees chose to install this same unreasonably dangerous ceiling throughout its fleet. PRINCESS's employees continue to repair, modify and/or install the same unreasonably dangerous ceiling, including *the Enchanted Princess*. At all times PRINCESS's employees had the ultimate control over the design and construction of *the Enchanted Princess*. PRINCESS's employees had the right to inspect both

the designs on paper and the design and construction at the yard. PRINCESS's employees had the right under its contract with the yard to approve or reject the design, construction and selection of all materials to construct all aspects of *the Enchanted Princess* and all other PRINCESS ships within the fleet including the same unreasonably dangerous ceiling. PRINCESS's employees had the right to reject any and all items, designs and construction. PRINCESS's employees held the ultimate control under their contract with the yard to withhold payment if an item or design is rejected or at issue and not resolved. PRINCESS's employees approved of the design, construction, and selection of materials of the subject area demonstrated by the fact that PRINCESS has operated and maintained the ship continuously since on or about 2019.

89. PRINCESS's employees knew or should have known that the subject area including the unreasonably dangerous ceiling it chose and installed on *the Enchanted Princess* was safe.

90. PRINCESS's employees knew or should have known of the dangerousness of the subject area, including the subject ceiling, since its installation in 2019.

91. **NOTICE IS NOT REQUIRED FOR EMPLOYEE NEGLIGENT ACTS**. PRINCESS is vicariously liable for negligent acts of its employees. A passenger is not required to establish that a shipowner had actual or constructive notice of a risk-creating condition to hold a shipowner liable for the negligent acts of its employees. *Yusko v. NCL (Bahamas), Ltd.*, 4 F.4th 1164, 1169-1170 (11th Cir. 2021). In this case PRINCESS's employee' negligent acts caused the Plaintiff to fall. Specifically, PRINCESS's employees were negligent by approving, designing, constructing, and/or selecting the materials for subject ceiling including the subject ceiling on board *the Enchanted Princess* where the subject incident occurred. PRINCESS's employees failed to design, construct, select, approve and/or select materials that complied with

industry standards. The design and/or materials PRINCESS's employees chose, selected, approved of and/or installed for the subject ceiling on board *the Enchanted Princess* were unreasonably dangerous.

92. Nevertheless, PRINCESS's crew either had actual notice and/or had constructive notice of the dangerous condition as alleged in paragraph 18 above and incorporated herein.

93. **PRINCESS BREACHED ITS DUTIES**. PRINCESS's employees breached their duties of care owed to KAST and were negligent by approving, designing, constructing, and/or selecting the materials for the subject ceiling on board *the Enchanted Princess* where the subject incident occurred. PRINCESS's employees failed to design, construct, select, approve and/or select materials that complied with industry standards. The design and/or materials PRINCESS's employees chose, selected, approved of and/or installed for the subject ceiling on board *the Enchanted Princess* were unreasonably dangerous.

94. **PROXIMATE CAUSE**. PRINCESS's employees' negligent design, construction, and selection of materials for the subject ceiling on board *the Enchanted Princess* proximately caused KAST's injuries. Had PRINCESS's employees properly and/or reasonably designed, constructed and selected the subject ceiling on board *the Enchanted Princess*, KAST would have never sustained injuries as a direct result of the subject injury.

95. **DAMAGES**. As a result of PRINCESS'S negligence, KAST has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of KAST vacation, cruise, and transportation costs.

96. The losses are permanent and/or continuing in nature.

97. KAST has suffered these losses in the past and will continue to suffer such losses in the future.

**WHEREFORE**, Plaintiff, WILLIAM KAST, demands judgment against Defendant, PRINCESS CRUISE LINES, LTD., for damages suffered and costs incurred, as well as for damages and costs that KAST will suffer and incur in the future, as a result of KAST's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of the value of KAST's vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff, WILLIAM KAST, demands trial by jury on all issues so triable.

**Dated:** August 12, 2025.

Respectfully submitted,

*/s/Yasir Billoo*_____
Yasir Billoo, Esq.
CA Bar No. 235091
ybilloo@ilp.law
International Law Partners LLP
2122 Hollywood Blvd
Hollywood, FL 33020
Tel: 954-374-7722
*Attorneys for KAST*